The first case on the call of the doc today is case number, is agenda number 9, case number 121048. Razavolgyi v. City of Aurora. Counsel for the appellants, you have agreed to divide your time 10-10 and then in rebuttal 10 minutes. You are responsible for keeping track of your individual time. The clerk will let you know when the last person's time has expired. You may proceed. May it please the court. Mr. Murphy, good morning. My name is Glenn Jaffe. I represent plaintiff, appellant Patricia Razavolgyi. I will be arguing for approximately 10 minutes. Mr. Brett Legner, representing the intervener, Illinois Department of Human Rights, will then take over at approximately 10 minute mark. And the heavy weight of the rebuttal will be by my associate, Mr. Julian Walters, who is our primary memorandum drafter in this case. Great to be here, of course. Thank you. On the one hand. On the other hand, let me say this. My client, Mr. Razavolgyi, would prefer to be about this time frame, appearing in 3rd Street in Geneva, trying this case. And we believe that that probably should be the case, except for the fact of these certified questions that were presented to the trial court and so certified. We fought that process, and we fought that process at the 2nd District Appellate Court, stating that it was inappropriate, the questions were not properly worded, they were overbroad, and that we should just proceed on in the litigation. But we are here, so that's destiny. And so we will present our argument pertaining thereto. First, if I may, address the third certified question pertaining to the Tort Immunity Act. Is the case really here only on the third certified question? We have briefed all three, particularly one in three, but they've been fully briefed. I would take the position, however, that really this court should address only the third certified question, the Tort Immunity Act. In that regard, it's our position, of course, that it is an improper Rule 308 question, that it's abstract, depends on factual predicates. It also asks for an advisory opinion, not just pertaining to this case, but as to all potential plaintiffs under a very complex body of law, the Illinois Human Rights Act, which not only encompasses employment law cases such as this, but other areas that Mr. Legner can also speak to. Now, on the one hand, we have the remedial nature of the broad-based Illinois Human Rights Act, which is the only statutory vehicle upon, or common law for that matter, that a plaintiff can use to enforce his or her rights under the Illinois Constitution, Article I, Sections 17 through 19, as it relates to discrimination, particularly here, discrimination in the workplace. Now, in the year 2008, what the legislature did was amend the Illinois Human Rights Act, and Mr. Covington from the Illinois State Bar Association was involved in this, and the legislature saw fit to amend the Illinois Human Rights Act to allow cases to proceed in a certain court. But we still have the process by which we have to file a charge at the Department of Human Rights. We have a 365-day administrative process, at which time, depending on how that goes, we can proceed in a certain court, which is exactly what we've done here with Raul Zabaldi. Either the time lapses, or there's a finding, and we can proceed in a certain court. But we still have that 365-day process. Now, that provision under the Illinois Human Rights Act, which allows us, pursuant to the Illinois Legislative Amendment 2008, goes head-to-head with the TIA provision regarding the one-year statute of limitations. So that's just one example of how TIA and the Illinois Human Rights Act go head-to-head. And, of course, there is an aspect of the remedy provision of the Illinois Human Rights Act, which is broad-based remedies. Much of it is equitable in nature. You can get injunctive relief, cease and desist order. But there is an aspect of it that, yes, relates to the issue of damages. So that goes head-to-head with the concept of TIA. So on the one hand, we have this broad-based statute that's enforcing constitutional rights. And then we have the narrowly construed TIA, whose legislative goal is to protect the economics of local public entities. It's understandable, but yet, in this context, I think we have a situation where the overriding goals of the Illinois Human Rights Act clearly exceed the legislative intent regarding TIA. And to the extent that TIA would limit the rights of persons working for local public entities, as here, it should be found to be either unconstitutional or one of those cases where this court has found that TIA should not apply. Like Smith v. Watford. Is all the relief you're requesting equitable? I would say that there's one aspect that is not equitable. Okay. Am I correct that immunity under TIA applies to damages rather than equitable relief? That's correct. So what would your position be with respect to the portion of relief you're requesting as damages? Our position would be that TIA should not apply. And let me cite one case that we mentioned. So certainly to the equitable relief. Certainly to the equitable relief, it does not apply. The attorney's fees does not apply, which is part of the question, in fact. They don't mention equitable relief. But, yes, we are seeking equitable relief. Makeful relief is equitable. Cease and desist order, if applicable, would be equitable. So how do you overcome the immunity on the damages part? Damages part? Right. Well, what we're saying here is if we would say, for example, if we look at the United States Supreme Court decision in 1980 of Owen v. City of Independence, Missouri, where there they were dealing with Section 1983, which is the enforcement vehicle for constitutional violations under federal law. And they specifically dealt with immunities there that were raised by a municipality. And to quote the United States Supreme Court, a damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantee. And the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed. That concept there would be applicable here to say that the damages remedy should be available. And this court, although has expanded TIA to some extent, has never said that all non-tort claims relating to damages are prohibited. In Smith v. Waukegan Park District, there was two reasons why this court said that that case, the damages remedy is available. The one reason is because it related to workers' comp. And as Justice McLaren said, this claim here is related to contractual law, just like this court said in Smith v. Waukegan. And secondly, this court in Smith v. Waukegan said that it is the employer that's responsible, not the individual. And therefore, TIA didn't apply to that factual scenario in any event. Same thing can be said here, too. So if I may, Your Honor, I would like to then, unless you have another question regarding the TIA issue, make a brief representation in my remaining couple of minutes regarding the first certified question. So once again, we're dealing with the issue of whether or not this hostile work environment is a separate and distinct claim under the Illinois Human Rights Act. And once again, it's the clear terms of the statute, the terms, privileges, and conditions of employment are protected by the statute. It has been held since the 1980s that the terms, privileges, and conditions language means in this context that hostile work environment based on age, race, sex, national order, religion, handicap, all of those are protected. And imagine a workplace where it would not be. Imagine a workplace where those would be lawful to create a hostile work environment on any other claim other than just sexual harassment. And on top of that, the retaliation provision of the act would be nullified as it relates to a hostile work environment based on race, national origin. Even the commissioner in the department adopted rules as to how to enforce it. Now they adopt these rules piecemeal, and the rules are applicable only to one area, but if this claim does not survive on that basis, then all Illinois Human Rights Act protected categories would be subject to lawful hostile work environment harassment, if you will. And additionally, the terms, privileges, and conditions of employment have also the statutory language relating to the accommodation issue. And once again, what the city is asking here in that particular certified question is for this court to overrule decades of Illinois law to be out of step with what the commission says, what the department says, what Illinois courts have said, and what federal courts have said, too, in statutes that are likely similar to these statutes. Counsel, could you articulate for us the elements or tests for a claim of harassment on the basis of disability? I'm sorry. Could you articulate the elements of a claim for harassment on the basis of disability? So a hostile work environment claim would be a claim in which an individual asserts that he or she has been subjected to statements, abuse, conduct, which makes the environment unworkable, that puts a severe limitation on that individual's ability to work. And as a result thereof, it became known to members of management or supervisors, which under respondent superior would mean the employer knows. So if the employer knows or reasonably should know that this individual is being subjected to a hostile work environment such that it impacts his or her ability to work, then it's the duty of that employer to make it stop, to make it cease, desist. And if the employer fails to do so, notwithstanding their knowledge or notwithstanding what their supervisors and managers knew, then the employer becomes responsible. So just like the regulations as adopted under the Illinois Human Rights Act speak to that very issue regarding when an employer is responsible for failing to take corrective action when the employer has put on notice that there is a problem of this nature and the problem is strong enough, big enough of a problem, that it has impacted the terms, privileges, and conditions of the employee's ability to work. But unless there's any further questions for myself, I will turn the table over to Mr. Leighton. Thank you so much. Good morning, your honors. May it please the court, counsel. Brett Leighton on behalf of the Illinois Department of Human Rights. Your honors, this court should reverse the appellate court's decision on the third certified question regarding whether provides immunity for damages to civil rights violations under the Human Rights Act. And it should affirm the decision of the appellate court on the first certified question that claims for harassment on the basis of a disability and claims for failure to accommodate a disability in employment are cognizable under the Illinois Human Rights Act. Your honors, at the outset, running through the answer to both of these questions is a core precept that the Illinois Human Rights Act is a broad statute that, among other things, but very importantly, implements the constitutional guarantees of Article I, Sections 17, 18, and 19 of the 1970 Illinois Constitution. Those provisions prohibit discrimination on the basis of race, color, sex, national ancestry, in the rental and sale of property, and in employment. Those provisions guarantee equal protection on the basis of sex, specifically with regard to local governments, specifically in Article I, Section 18, as well as those provisions prohibit discrimination on the basis of a disability, physical or mental disability, in the sale of rental property, and in employment. The Illinois Constitution does not define discrimination. Nor does the Illinois Human Rights Act specifically define discrimination in all measures. Nor can it. Discrimination is an invidious concept that takes many forms. For that reason, the Illinois Human Rights Act is given broad understanding. So if a claim falls within the spirit or the purpose of the Human Rights Act, it should be recognized. To be sure, sometimes the General Assembly acts with a specific intent to redress a particular type, a very narrow type of discrimination. Mr. Legner, can I ask you, is filing a complaint with the city under the anti-harassment policy, is that a prerequisite to a suit? Filing a complaint with the state? Yeah, I guess with the state. But the city's argument is there's a prerequisite. Okay, so we're on the, yes, okay. The, in terms of the elements of the cause of action of the harassment suit, yeah, the department hasn't taken a position on that particular point, in terms of the elements. I think that, you know, again, it's a good argument. The department just doesn't take a position on it, hasn't taken a position specifically on that question. Okay. All right, so you're not going to get into that. Apparently. Okay. All right, go ahead. If we follow your argument and decline to answer number three, does that impact whether we should answer one and two when they really weren't, that really wasn't the basis that this case came to us? Well, if this court declines to answer number three, then I think it should then decline to address one and two. I think in declining to answer number three, it should vacate the appellate court's decision because the question was improper. And then if that question, if this court decides not to address that question, then I think it need not address the other questions. Thank you. I want to turn to just one quick point on that point that Justice Garland raised. That question to me is too broad. It broadly asks whether the Tort Immunity Act applies to bar a damages claim under the Human Rights Act, but the Human Rights Act involves many different types of claims. Article two involves employment. Article three, real estate. Article five, public accommodations. Article 5A, education. In all of those different articles, the municipality has a very different relationship to the individual that may be claiming discrimination. The individual may be an employee. The individual may be somebody who's being educated. The individual may be somebody who is seeking housing from a housing authority. In all of those situations, the municipality has fundamentally different roles and duties and responsibilities in the relationship with the individual. The broad question, and in many of those instances that are not presented by this case, the broad question as framed in certified question three cuts across all of those, is does this court essentially render an advisory opinion in all of those instances? And that's just a problem. Now, Justice Thomas, you asked my co-counsel earlier, how do you overcome immunity on damages? And you're exactly right that that is the core question here. To be sure, the Tort Immunity Act is not providing immunity for any other type of immunity other than damages. It makes it clear that this is only an immunity from damages. But the Tort Immunity Act does not provide any immunity from damages here because the Tort Immunity Act must be narrowly construed. It is an act that is a derogation of common law. The Human Rights Act, by contrast, must be broadly construed for two reasons. One, it is a remedial strategy, so its scope and its remedies must be given broad effect as a general matter. And two, because it is implementing constitutional protections against discrimination, but discrimination is a broad and difficult to define concept, and it must be given a broad meaning, a broad understanding, such that things that fall within the spirit of that should be redressable. Now, given the fact that we have a statute in the Human Rights Act that specifically says that municipalities are employers and specifically says that employers who violate civil rights are subject to an award of damages to be given effect over a general, narrowly construed statute that provides some blanket immunities without any reference to civil rights. There is no reference to civil rights anywhere in the Tort Immunity Act. Your Honors, I see that my time is up, so I would just like to conclude with the notion that this Court should give broad effect to the Human Rights Act as compared to the narrow effect of the Tort Immunity Act. While holding that immunity applied in this case would be tantamount to holding that an individual could not receive damages if a municipality, as an employer, discriminated against them on the basis of disability, status, race. That is clearly not the intent of the General Assembly in passing the Human Rights Act, nor of the framers of the Constitution in providing those specific constitutional guarantees against such discrimination. Thank you, Mr. Wagner. Mr. Murphy. May it please the Court and opposing counsel, Don Murphy for the City of Aurora. Mr. Chief Justice, to answer your first question, the Certificate of Importance that was issued was only on Question 3. We took the position in our response that under the doctrine that this Court takes the whole case, it takes the other certified questions. So the parties, as you can see from the briefs, which we're talking about, pure questions of law may have been overwritten by some of us. The Court certainly has the discretion to take questions 1 and 2. These are pure questions of law, and I'd like to make a couple of brief responses. Justice Thomas, you are absolutely correct. We are only seeking an interpretation that the Tort Immunity Act limits our liability for damages. A simple example, emotional distress of employees fired, they may seek to recover emotional distress damages. I'll get into that in a moment. The Attorney General made a statement at the end of his argument that the Tort Immunity Act does not apply to constitutional claims. Section 1-204 of the Tort Immunity Act specifically defines injury to include any injury in a civil action, whether based on the Constitution of the United States, the Constitution of the State of Illinois, and the statutes or common law of Illinois or the United States. Clearly, the protection that we are entitled to under the Tort Immunity Act encompasses statutes adopted by the General Assembly. All of the questions deal with an issue that this Court addresses maybe all too often. What do we do as a Court with matters of silence? Does the silence in a statute in the Illinois Human Rights Act mean that the Tort Immunity Act applies or doesn't apply? Does the absence of any language in the Human Rights Act regarding reasonable accommodation mean that there's no requirement in the state law as opposed to the federal law, or does it mean that there's an implied obligation? Does a statutory structure dealing with sexual harassment, where not only are the elements of the claim, but the elements of defense set forth in the statute, mean that disability harassment, whatever that means, has not been provided for by the legislature or that it has been impliedly provided for by the legislation? I think that's the common nucleus, and should the Court entertain all of the questions, that's the challenge. The third question is not overbroad, it's not ambiguous. Does the Tort Immunity Act apply to limit damage claims brought under the Illinois Human Rights Act? The parties have spent quite a bit of time fencing over the words duty and immunity. All sorts of municipalities are under all sorts of duties, whether they are common law or statutory. We're under a duty to maintain our streets, we're under a duty to do all sorts of things under the common law. But what the legislature has done has been to limit our liability as to those duties. To be sure, we have duties under the Illinois Human Rights Act. But that's quite apart from the question of are we immune from a certain category of liability, and that is a purely legislative conclusion. We have a Tort Immunity Act, and we have a Human Rights Act. There is no carve-out in either the Tort Immunity Act or the Human Rights Act for municipal liability, as there is in the Tort Immunity Act, for example, for workers' compensation. It's our position that the logic that flows from that, from a number of decisions from this court, is that absent either a carve-out or perhaps a comprehensive legislative structure that sets forth a separate category of municipal liability or public sector liability for damages, absent either of those two, the municipality is entitled to assert the Tort Immunity Act liabilities. Counsel has talked about the comprehensive nature of the Department of Human Rights Act. Well, there's all sorts of comprehensive acts that are enacted by the legislature, but we still have the benefit of the Tort Immunity Act. It is just as dangerous for a public employee on a 10th floor scaffold on a publicly owned building as it is on a privately owned building. The Structural Work Act is a comprehensive remedial structure passed by the legislature to protect workers, but this court has held in the Epstein case that for the exact reasons that I'm arguing in this case, that the legislature has made a determination to limit the liability of municipalities, notwithstanding the comprehensive nature of the Structural Work Act. We believe that, at a minimum, our immunity under the Tort Immunity Act entitles us to relief from certain categories of damages. Plaintiffs want actual damages. They want emotional distress damages and the like. Counsel, in your appeal, you argue, quote, an immediate appeal will prevent the city's need to appeal these questions of law in the event plaintiff obtains a judgment in her favor on the harassment claims, unquote. Isn't this asking us to render an advisory opinion? The court has now segued into the other question, because we did not appeal the appellate court's determination on the Tort Immunity Act. Is there an element of that there isn't a, I mean, from what you're arguing, it sounds to me anyway like you're asking us to render an advisory opinion so it will be easier when you get to a factual determination. I don't believe so, Your Honor, for this reason. We have a complaint that alleges various forms of both equitable and damage relief. By rendering a decision, in this case we're not asking for an advisory thing, we're asking based on a particular set of facts. Is the city of Aurora liable for emotional distress damages in the event the plaintiff proves she was wrongfully terminated? At the end, this is a termination case, and if it goes before the jury, the instruction will be she's entitled to certain relief, but what is ultimately determined to be damage relief, using general principles, wouldn't be on that menu. So, Your Honor, I do believe we have an actual controversy here, certainly on the third question. It is, let me now turn to the other question, because I will concede we are treading a little closer to the advisory opinion land on reasonable accommodation. Let me turn to that. In our case, the argument of, or the allegations of the complaint are that the city of Aurora failed to accommodate my mental disability, the plaintiff's mental disability, by failing to stop the harassment, meaning the teasing, by the co-employees. The issue we have, in terms of moving to strike the reasonable accommodation claim, is that everybody is in agreement that the statute is silent on the issue of reasonable accommodation. To be sure, the issue of harassment is a different one, because there's case law other than this unusual statute we have. But please recall that, unlike harassment, which is, thou shalt not, thou shalt not allow an employee to be harassed, thou shalt not have an employee be subject to sexual type harassment. Reasonable accommodation is in the nature of an affirmative action requirement. Not only must you not discriminate, but you must also provide reasonable accommodation for employees. That is in the text of ADA. So all of the regulations that the state talks about being modeled after ADA are based on a specific provision in the federal law obligating employers to provide reasonable accommodations. And as one of the commentators of the Human Rights Act, the article in the cardinal said, there isn't a hint of an obligation for an employer to provide a reasonable accommodation. Our position on that, and we believe because we're the complaint your honor says that we failed to provide a reasonable accommodation, is that there is no statutory obligation to do so. Let me now finally turn to the issue of disability harassment. I wouldn't have an argument at all on this point were it not for the unusual language of Section 2-102 of the Human Rights Act. That is the language that specifically says that employees may not engage in sexual harassment. And then it goes on to provide employer defenses to sexual harassment. And those defenses, the court's opinion in the Sangamon County Police case says, well the statute is very clear. If the sexual harassment is by a management employee, a supervisory employee, strict liability. The statute further provides that if the harassment is by co-employees, it's essentially a negligence standard. That's what the statute says. The employer has to be aware of it and fail to take action. There's nothing in the statute dealing with disability harassment, which raises the question, if the statute is silent on that, how can we as employers be subject to a specific obligation under that? That's the essence of the dissents ruling in the appellate court. We like the majority on question three. We don't like the majority on questions one and two. I guess that's what happens with a split decision. But I believe that the overall flaw in the appellate court's reasoning on both of these questions is the position that because the statute does not explicitly state that other forms of harassment are not covered, therefore they are covered. The last time I appeared in this building was in 2011 in a case called Nowak v. City of Country Club Hills. The court's opinion written by Justice Thomas spoke in terms of the impermissible double negative presumption from using that type of language, meaning just because the statute says you can't do something doesn't mean that it's not covered. That is a license for mischief, as this court said, in the Nowak case. So on questions dealing with the reasonable accommodation, we believe it is a live question because we are subjected to liability for failing to accommodate Ms. Rosa Bowling. We're not subject to liability on that claim because there is nothing in the statute which remotely would indicate that a public employer or any employer is subject to an affirmative reasonable accommodation requirement. Now, this rarely would come up because Mr. Murphy, counsel would argue that the law has already been expanded to include disability harassment based on case law and joint rules. How do you respond to that? That is true, but not a decision by this court. And while this court defers to the agency, if the authority is not there, it's not there because the court is limited to implementing a structure that the legislature has put into place. So 100 regulations, 50 lower court opinions do not find this court, if you conclude that the language is not there and the legislature did not intend to impose this affirmative action requirement on employers. Did I get that right with Mr. Legner, that one of your positions is that with respect to the anti-harassment policy, the filing of a complaint was necessary? That's an affirmative defense that we articulated, and that was subsumed in one of the questions. Is it an affirmative requirement for the employee to avail himself or herself of the anti-harassment policies of the employer? The plaintiff admits that she filed no written complaint, but basically argues that she repeatedly complained to her immediate supervisors, and that's tantamount to having done the same thing. Do we have fact questions that we have to deal with with respect to that question? That is a fact question, and that is something that goes beyond this case. But it relates, Your Honor, to the problem that I have defending this case because we've got a specific defense for sexual harassment. The legislature has given that to us. The appellate court majority said, well, you can't import that defense in a disability discrimination case. I guess that's good for me, but it certainly is not logical as a matter of statutory interpretation that a defense that relates solely to one form of harassment can be imported to another form of harassment. It doesn't make logical sense, which may be different from legislative sense. What's the practical import if this court only handles the certified question by which it got here, really, the one that was certified important to this court? Then the case goes back to trial court. I believe then the other answers of the appellate court will hold. I will have to defend a reasonable accommodation claim, and the city will have to defend the harassment claim, but we will have the benefit of the sexual harassment defense, which in the case of co-employee harassment, which is what's alleged here. What's alleged in the complaint of harassment is strictly co-employee harassment, and we would have the benefit of the negligence standard that's set forth in the statute. So apparently that's why everybody seems to be in agreement you want this court to answer all three of the questions because that might involve appeals down the line, obviously. That is correct. This is very unusual where it's almost like a double layer of pure questions of law, which creates Your Honor's discomfort, but these questions aren't going to go away. The harassment is the teasing, and what is our responsibility as an employer? Because we clearly have a co-employee case. We do not have, in the Sangamon County Police Department case, managerial harassment. So it would be helpful, I think, not simply to us, but to everybody, to determine what the standard of employer liability is on that end. The reasonable accommodation, as I mentioned, bleeds into the harassment because ordinarily reasonable accommodation is I need a wheelchair, I need help performing my job, I need a certain time off, et cetera, et cetera. This is a very unusual accommodation claim, which the accommodation I want is to stop the harassment. It kind of blends into that. That is not a pure question of law, I think, Your Honor, but I do think that the court would help the parties and all of the people in my position representing municipalities and local governments who respond to these questions in both state court and federal court. I have to admit, a lion's share of these cases end up being in federal court, particularly the ADA, because there is a specific statutory prescription and there is a specific statutory affirmative obligation for reasonable accommodation. But I believe the court has the discretion to answer all of these because they relate to live issues in a live case that is going back down, and it would avoid the issue of piecemeal appeals. And I believe the court has the ability to answer these questions on what is essentially a pleading record and very little factual development. Thank you, Your Honor. Good morning, Your Honors. My name is Julianne Walters, and I will be presenting the rebuttal today. It is my intention with this rebuttal to tie up some loose ends, so I request the court's consideration as I jump around a bit. Now, with regards to one issue that one of the justices questioned, the question was what were the elements of a hostile work environment on the basis of disability. And I'd like to extrapolate on what my co-counsel said. The elements is first that the employee must be in a protected class. In this case, the employee must be disabled under the Act. The second element is that the employee must be performing according to the employer's legitimate business expectations and suffer an adverse employment action. In this case, the adverse employment action is the hostile work environment itself. Now, with regards to another question posed by Justice Thomas, whether filing a complaint pursuant to the city's policy is a prerequisite to bringing suit, the answer to that question, Your Honor, would be no. The Pontecello decision, Pontecello v. Aramark, which was a federal court decision, that court specifically stated that an employee does not have to submit a complaint pursuant to the employer's anti-harassment, anti-discrimination policy. What the employee must do is apprise someone who the employee believes could receive those complaints by whatever means the employee deems reasonable. And in this case, Your Honor, Ms. Roza Volgi did, although she admitted she did not utilize the specific employer policies, she does say that she apprised her supervisor, Mr. Dave Dykstra, of her complaints for making the harassment stop and also requesting an accommodation. And, Your Honor, this is sufficient for her to state her claim and satisfy her burden moving forward on her causes of action. Now, with regards to the TIA, an opposing counsel mentioned that the Section 1204 of the TIA's definition of injury includes violations for constitutional claims, which is what we're dealing with here. Now, if Your Honors would recollect, the appellate court in the 2nd District, they overturned some of their prior precedents, which includes the Burkett decision. Now, in the Burkett decision, the diocese there made this exact argument. They made the argument that we made, that if the TIA applies to constitutional violations, it is necessarily unconstitutional. And the 2nd District, in its Burkett decision, said the TIA and its definition of injury to include constitutional violations is not unconstitutional because it does not apply to constitutional claims. But now that question is back before us. If the TIA applies to provides immunity for constitutional claims, how can that be constitutional? Because the Constitution is the law of the land. That should trump any type of legislative amendment, any type of legislative precedent over anything else. Now, with regards to the TIA, opposing counsel also made the argument that relying on Epstein, the Epstein decision which dealt with the Structural Work Act and how the TIA applied to that. I'd like to remind Your Honors that the Structural Work Act was in effect at the time that the TIA was enacted. The Structural Work Act was enacted in 1907. The TIA was enacted in 1965. Obviously when the legislature enacted the TIA, they knew the Structural Work Act was in existence. Yet they did not, in their list of exemptions, include the Structural Work Act as they did with claims under the Workers' Compensation Law. However, Your Honors, the IHRA, the Human Rights Act, was not in existence yet. So how the legislature could include the Human Rights Act in its list of exemptions at that time is impossible. Now, with regards to that being said, Your Honor, the case recited to Illinois Supreme Court Decision State v. Mikosh, this Court specifically held that a later enactment is a later expression of legislative intent. So the fact that the Human Rights Act imposes liabilities, very specific liabilities in very specific contexts on the state, indicates that the legislature was meaning to actually, in fact, hold the local municipal entities liable. Now, I wanted to get to the main crux of this case, and I think is the elephant in the room. Does the TIA actually immunize claims for damages under the Human Rights Act? Now, opposing counsel, to avoid this question being an advisory opinion, made the argument that, no, no, this question should apply to the particular facts of this case. So let's look at the particular facts of this case. The TIA is very specific on what it applies to. The very first provision of the TIA, Section 10-1-101.1, it explicitly says that the TIA immunizes local governmental entities for operations of government. That's what I want this court to focus on, operation of government. What does that mean? The Smith v. Waukegan decision specifically addresses that issue. And so does the Owens decision and the Platinum Partners decision that we cited too in our reply brief. In those decisions, a local municipal entity who violates the law is not operating as an arm of government. That's what those cases held, Your Honors. Smith v. Waukegan explicitly said, and I quote, we cannot identify what legitimate competing interests are involved when a public entity decides to violate the clear prohibition of another enactment of legislature. In other words, they're not serving the benefits of the public when they are violating the law. Excuse me. So by the very nature, the very first legislative pronouncement of the TIA, violating the law does not apply because they're not acting under the operation of government. Now jumping ahead to the questions under the first certified question, Your Honors. First and foremost, with regards to the disability harassment argument, opposing counsel did not at all address the case that we cited to Cook County Sheriff, which is a recent district. And the first district ruled in accordance with the same reasoning that the second district here utilized to find that Section 2102A of the Illinois Human Rights Act is in fact ambiguous. The terms, privileges, and conditions clause can be understood in multiple ways to include claims for discriminatory work in the environment. That has been the consensus in the commission. And there's no reason why this court should deviate from that when one, there's not a substantial ground for difference of opinion. And that by itself illustrates that this question was not properly certified in the first place. Now with regards to the reasonable accommodation question, opposing counsel made the argument that there is nothing in the Illinois Human Rights Act that applies explicitly for claims of reasonable accommodation with respect to disability. However, Your Honors, the Public Act 98-1050 at paragraph 4, which we identified in our briefs, it explicitly says employers are familiar with the reasonable accommodation framework. This is true because the commission has promulgated rules. And those rules are to be construed just like statutes. So that has been the law of this state to date. And the employers are familiar with that. And furthermore, Your Honors, under the retaliation Section 6101, if I could just briefly wrap up, Your Honors, the retaliation provision of 6101 also recognizes that employees can have a reasonable accommodation with respect to disability. So Your Honors, we request that the third affirmative, the third certified question be vacated and the first certified question be affirmed. Thank you. Thank you. Case number 121048 will be taken under advisement as agenda number 9. Mr. Gaffney, Mr. Lagner, Ms. Walters, and Mr. Murphy, we thank you for your arguments this morning. You are excused.